**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GREGORY VALANCIUS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-00364** |
| | ) | |
| **CATHOLIC DIOCESE OF NASHVILLE,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

In anticipation of trial, the Diocese of Nashville has filed a motion to exclude the expert testimony of Dr. Jennifer Marshall, which is fully briefed. (Doc. Nos. 67 and 72). For the reasons that follow, the motion will be **DENIED**.

This case arises from the alleged sex abuse of minors by Father Walter Emala. Gregory Valancius alleges that sometime in 1968 or 1969 he was sexually abused by Emala, while he was employed by the Archdiocese of Baltimore. Valancius brings this case alleging multiple tort claims against the Diocese of Nashville because he believes it had knowledge of Emala's sexual abuse of minors as early as 1958, but the Nashville Diocese failed to warn the Archdiocese about Emala. For Valancius' claim for compensatory damages, he plans to call Dr. Marhsall. Based on her education, experience, her evaluation, and testing of Valancius, she will tell the jury that Valancius suffers from "chronic, pervasive and severe symptoms of anxiety and symptoms of unresolved trauma consistent with complex posttraumatic stress disorder ('PTSD')." (Doc. No. 67-1 at 13).

The Diocese of Nashville challenges the admissibility of Marshall's opinions as not reliable as required in Federal Rule of Evidence 702(c). Specifically, it argues that her opinion "rests on

meeting" Valancius "one time," she reviewed no medical records, no treatment records, failed to rule out other "possible contributing factors," such as his Parkinson's disease and his recent stroke. (Doc. No. 67 at 2). It requests a hearing, but the Court can resolve this motion without a hearing.

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony and opinions at trial. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d).

Under Rule 702, "a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529 (6th Cir. 2008). First, the witness must be qualified by "knowledge, skill, experience, training, or education." Id. (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." In re Scrap Metal, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Third, the testimony "must be reliable." In re Scrap Metal, 527 F.3d at 529 (citing Fed. R. Evid. 702). The Defendant does not challenge the first two requirements, but it argues Marshall does not satisfy the third.

To determine reliability under Rule 702, the Court must determine not "whether [the expert's opinion] is correct, but rather [] whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." Id. at 529–30. "[T]he key handholds of Rule 702" must be remembered: "[t]o be admissible, any relevant scientific or technical evidence must be the 'product of reliable principles and methods' and must have been 'reliably applied' in the case." Id. (quoting Fed. R. Evid. 702(c), (d)).

In evaluating these requirements, the Court acts as the "gatekeeper" of the expert opinion evidence, Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997), a function it must exercise "with heightened care." United States v. Cunningham, 679 F.3d 355, 380 (6th Cir. 2012) (quotations omitted). The Court will not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 729 (6th Cir. 2012) (citations omitted). Indeed, Rule 702 does not "require anything approaching absolute certainty." Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 671–72 (6th Cir. 2010) (citing Daubert, 509 U.S. at 590). Under Daubert, experts are "permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion has a reliable basis in the knowledge and experience of the discipline." Dilts v. United Grp. Servs., LLC, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting Daubert, 509 U.S. at 592). Still, Daubert and Rule 702 require that "the expert testimony be derived from inferences based on a scientific method and that those inferences be derived from the facts of the case at hand," Jahn v. Equine Servs. PSC, 233 F.3d 382, 390 (6th Cir. 2000), and the expert's knowledge must be based on "more than subjective belief or unsupported speculation." Tamraz, 620 F.3d at 670 (citation and quotations omitted).

With those principles in mind, the Sixth Circuit's recent decision in Davis v. Sig Sauer, Inc., explains how courts should apply Rule 702(b)'s requirement that expert testimony rest on

"sufficient facts or data." 126 F.4th 1213, 1224–26 (6th Cir. 2025). An expert may base an opinion on facts or data that the expert "has been made aware of or personally observed." Id. at 1224 (quoting Fed. R. Evid. 702). Weaknesses "in the factual basis" of the resulting opinion ordinarily "bear on the weight of the evidence rather than on its admissibility." Id. (quoting In re Scrap Metal, 527 F.3d at 530).

In reaching that conclusion, Davis relied on two published Sixth Circuit decisions: In re Scrap Metal Antitrust Litig., 527 F.3d 517 (6th Cir. 2008) and Jahn v. Equine Servs. PSC, 233 F.3d 382 (6th Cir. 2000). Id. at 1225–26. In In re Scrap Metal, the expert relied on "faulty underlying marketplace data" but nevertheless employed a reliable methodology. Davis, 126 F.4th at 1225 (citing In re Scrap Metal, 527 F.3d at 524–27). The faulty data thus affected the weight of the opinion, not its admissibility. Id. (citing In re Scrap Metal, 527 F.3d at 531). Likewise, in Jahn, the experts' analyses were limited by the "lack of records." Id. at 1226 (citing Jahn, 233 F.3d at 390). Again, exclusion was unwarranted because the experts could use only the evidence available, and the Sixth Circuit declined to "hold experts to a more exacting standard than [the] evidence allow[ed]." Id. (citing Jahn, 233 F.3d at 390).

The lesson from Davis is that exclusion of an expert is not justified when facts and data relied upon by an expert are "faulty," as in In re Scrap Metal, or incomplete, as in Jahn. Instead, those are factors the jury can consider in determining how much weight should be given to the expert witnesses' testimony. As Davis aptly noted, during cross-examination it is "up to opposing counsel" to inquire into the expert's factual basis for the jury's consideration. Id. at 1224; see also In re John Richards Homes Bldg. Co., 439 F.3d 248, 264 (6th Cir. 2006) ("[A]n opposing party who would challenge the facts underlying the expert's opinion must do so by cross-examination.").

The Diocese of Nashville properly highlights the shortcomings of Marshall's opinion. However, it overlooks that Marshall's opinion is also based on Plaintiff's deposition testimony and clinical testing results, which included psychological test data and the diagnostic criteria for PTSD based on the Diagnostic and Statistical Manuel of Mental Disorder: Fifth Edition, which is also used by the National Center for PTSD. Marshall identifies the criteria for PTSD and applies it to Plaintiff. This satisfies the third requirement because she identifies her methodology, why it is appropriate, and applies it to Plaintiff. This is enough to satisfy the reliability requirement. On cross-examination the Defendant can highlight her shortcomings and the jury can then decide credibility and weight. Based on the Sixth Circuit cases discussed above, this Court cannot require more.

Accordingly, for the reasons set forth above, the motion to exclude (Doc. No. 67) is **DENIED**.

IT IS SO ORDERED.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE